Ms. Cessna, you may proceed. May it please the court, I'm Heather Cessna with ABS Legal Services here on behalf of the veteran Mr. Robert Messier. And we have requested three minutes for rebuttal time. What we're here on this morning is a very specific question of law. Basically what this all boils down to is what is the definition under the veteran's claimant system of negative evidence. When a veteran is seeking compensation for service-connected disability, the evidence has to show three things. Current disability, in this case Mr. Messier's current disability was diagnosis of chlorectomy. Second, they have to show that it was incurred or aggravated by service. There was an allegation of, in this case, exposure to Agent Orange or DDT. And number three, a medical nexus between those two. What statutory provision are you referring to? We are referring to the basic statutory provision for service connection. But you're not challenging an interpretation of that statutory provision? What we're challenging is the interpretation of the two statutes, 5107B, the benefit of the doubt or the weighing provision between positive and negative evidence, and how that interacts with the provision under 5103A, D, 2, B, which is the duty to assist in getting a medical nexus opinion. You're not really challenging those statutes or any statutory interpretation. As I read your case, it seems to me you're asking us to assess whether the facts are such that they fall under these provisions or whether the law as applied to the facts would yield a different result. And those are matters not within our jurisdiction. And let me be very clear about this. And part of the confusion here results from, I think, the fact that both of our briefs are written from a different perspective because there is a factual dispute underlying this case. However, that factual dispute is actually kind of a distinction without a difference as to whether or not the medical nexus opinion is an actual absence of evidence or negative evidence in this case unless we have a definition of what the negative evidence is. And we're here under, I think you have jurisdiction to consider this issue under Morgan, which is at 327 F. 3rd, 1357, and its interpretation of 7292A, which basically finds that when the CAVC relies upon an interpretation of the statutes and we take an appeal or we disagree with the challenge of that interpretation and that interpretation, if it changes, essentially would have a difference in the outcome of the case, you have the ability to consider whether the CAVC has appropriately interpreted those two statutes. What statute is it that you're challenging and what interpretation of that statute? Essentially, in this case, the CAVC essentially found that there was no real functional difference between whether or not there's an absence of evidence on the medical nexus question or whether or not there's an explicitly negative medical nexus finding in this case. And what we're asking for, and maybe this is 5107B, the negative evidence of 5107B, and how that interacts with 5103A. Basically what we're asking for is a statutory interpretation that follows basic rules of statutory interpretation, which requires us to look at how you use the common language, unambiguous language in a statute, in the context of the other statutes. You can't look at a statute in a vacuum. And our allegation is essentially that if we read the negative evidence as it's listed in 5107B as requiring something less than an explicitly negative medical nexus opinion in the context of a medical nexus question, then that's a violation of the VA's duty to assist under 5103A. Am I bringing you along? I'm not sure you've answered my question. So what interpretation would you have us make of 5107B? Is it consistent with an interpretation that already exists? Well, maybe I should start off this way. The problem here is that we don't have an explicit definition of what constitutes negative evidence in the context of a medical nexus opinion. And that is because this is a proclaimant system, and consequently we have this interplay between the benefit of the doubt provision under 5107B and the duty of the Veterans Administration to assist in developing the claim under 5103A. It's our contingent. I'm sorry. Can I just say one thing? Sure. I apologize, but you may be able to help me ask this completely in your chair. I can go through and kind of order. First, I'd just like to know this. Your opponents say, look, there is evidence in the record, and the Board and the Court of Veterans have looked at that evidence. They quote language on page 10 of their brief, which they say shows that there was a medical personality who said, but those burns are not related. It might have gotten back then. They're not related. So I guess my question to you is, assuming for the sake of discussion that we were to say, hey, that is evidence, would all this statutory interpretation stuff be meaningful at all? Well, I think we need to have a definition of what constitutes the negative evidence specifically. And, again, part of the difficulty here is that there is an underlying factual dispute. We're not denying that. We're just saying that that's not a question that we can even get to without having a definition of what actually is negative evidence. And I guess my question would be, is it the horse or the cart that kind of goes first? Well, our convention is that the horse has to come first, and the horse in this case has to be the definition of negative evidence. Because if you don't know what negative evidence is, then how are you going to be able to look at 5107B and that wing provision, whether it requires more positive evidence or negative evidence or whether there's basically an equipoise of evidence, if you don't know what negative evidence is? So what are you proposing here? I mean, do you have a definition of negative evidence that you're saying would be meaningful? In the context of the medical nexus opinion, what we want this Court to find is essentially that the only thing that can qualify as negative evidence of medical nexus is an explicit opinion from the VA examiner on his medical nexus opinion that actually says, no, this is not related to service. And the reason is because 5103A, 2DB, which requires that there be a medical opinion on the nexus question. It's the veteran's burden to establish a basis for a claim. Well, and let me go through. It's not the government's burden to prove the absence of a claim. This is a pro-claimant system. There is an initial burden under 5107A that talks about that the veteran has to present and support his claim for benefits. You're not asking us to change that. No, not at all. In this case, Mr. Messier clearly made that claim, and that triggers a general duty to assist under 5103A, which is kind of the basic duty for the Veterans Administration, to assist the veteran in developing his claim by getting his service medical records, things along that nature. As you get those records in and you begin looking at those, if the evidence indicates that there may be a nexus, and that's under McClendon and 5103A, D, 2B, then there's kind of a more specific duty to assist in that instance of getting an opinion on the medical nexus question. Clearly, in this case, Mr. Messier met all the way up to that burden because there was a medical opinion that was required in this case. The problem here is that there were several different things that were alleged in this specific case as possibly underlying his current disability of chloracne. Basically, the medical opinion came back and said that his current skin condition was unrelated to a skin condition that had manifested itself as a result of a cravesite burn while he was in service. There was a failure on his part to establish the necessary nexus. However, there was a second allegation. His second claim was in regards to exposure, which he presented sufficient evidence of exposure for Agent Orange or DDT for the medical examiner to have been required to determine whether or not his current condition was related to service and that exposure. The problem is that in this examination, and like I said, this is part of the underlying factual dispute that makes this a little bit difficult to comprehend because, as I said, we have to get to the... Not only difficult to comprehend, but difficult and virtually impossible for us to decide. We can't do it factually. Right, but let me finish my thought, and then I can kind of address that in a little bit better detail. Basically, in this case, what you had is the medical examiner failed to make an opinion on this explicit medical nexus between his current disability and his exposure to Agent Orange. Now, there's the factual dispute between Mr. Messier and the secretary as to whether or not, because the examiner actually mentioned Agent Orange in his opinion, whether or not that opinion was an explicitly negative opinion on the nexus question or whether or not that was an absence of a negative opinion on that specific question. However, the problem here... But isn't that really what this case is all about? You don't like the fact that the service connection was denied based upon the fact that there was an interpretation of this examination as being inconclusive on the exposure to Agent Orange, and that strikes me as essentially fact. The problem here is that the CAVC essentially found, in their opinion, that there was no evidence of a nexus between his current disability and service. And the problem here is that that, in and of itself, basically found that a negative finding on the nexus question was basically equivalent to not making a finding. There is a difference between not having a finding that it's related and whether or not you have a finding that explicitly says it's not related. And the problem here is that if you have a finding that doesn't explicitly say, yes, it is related or no, it's not related, then that triggers the duty to assist. Or if there's not a finding that it's related to something else, doesn't that strike? Not if they don't address the specific question. I mean, just because, for instance, if I go in and I say that I hurt myself and I think it might be related to this particular incident, but there's another possible incident there that the vet has made the claim on, and it's clearly in the record. Under 5103A2DB, the medical examiner has a duty to look at that possible cause as to the nexus question. And if they fail to make an exclusive finding on that, making a finding that it's not related to something else doesn't mean that it wasn't related to this over here. And there was, partially. Like I said, there was partially in this case two different possible bases for this. There was the exposure to the chlorocyte burn while he was in service, and then there was also the possibility of Agent Orange exposure, DTC exposure. And there was an explicit finding on the burn, but not on the Agent Orange. Wasn't there a further finding that this was somehow related to a condition? I guess the statement was neurotic excoriations. By saying, by having an examiner look at it, and make a conclusion of that, is that not a conclusion? Well, and your Honor, I guess this is what we're getting to, is that the factual dispute about whether or not that opinion actually is an explicit finding on the Agent Orange question is a question of fact that we can't get to unless we decide what is negative evidence in the context of these two statutes. Negative evidence in these two statutes, and this is what we're asking this Court to find, has to be an explicit negative finding on the medical nexus question, on the evidence that the examiner was supposed to be looking at. What you're saying is if an examiner looks at something and says, this medical condition of which you complain is likely caused by X, you're not satisfied unless that examiner also says, and not anything else. It's not enough to say it's caused by X. We suspect it's caused by X. In your view, it's still insufficient until they say, and not anything else. Is that it? Let me be careful about how I answer this, because we're not asking that the examiner just be able to rule out absolutely everything else that could possibly come up. I mean, there has to be something in the record, and that's part of their duty to assist, that's part of their duty to develop that record, is to come up with, and in this case, Mr. Messiah specifically asked them to look at the agent approach question, which they failed to do. If there's something like that that meets that basic burden under McClendon, then there has to be an explicit finding on each of those things, yes. But doesn't the finding as to what the cause of his condition is take care of any number of possibilities? I mean, it's like, you know, I have a twist of such a form from, and I have a medical report that says this was caused by something that happened yesterday. It doesn't matter whether my contention is it happened 10 years ago, I have another contention that it happened in a car accident 15 years ago. All those are taken care of and disposed of by a medical report that says it's based on something that happened yesterday. Am I wrong about that? Well, in this case, the problem here is that when there's a finding that it's not related to what happened yesterday, then it leaves open this whole realm of, well, it could be related to something else, but we don't know because there's no specific finding on that. Where is the problem that it didn't happen yesterday? I mean, we have a medical finding. That's what I'm saying. That's why we're talking about specifically the definition of negative evidence as opposed to positive evidence in this context. So you're saying that finding was not adequate under what you think the definition under the statute is? What we're arguing is that under the statutory interpretation, when you read 5107B together with 5103A, negative evidence of medical nexus has to be explicit because anything less than that triggers that duty to assist again in getting an opinion that's either a yes, this is related, or a no, it's not. If you've got something in between that, then they have to go back and basically remand the case for an opinion that says yes, it is, or no, it's not connected. All right, I think we understand your position. You've used all of your rebuttal time, but I will restore two minutes if you need it. Thank you, Your Honor. Let's hear from the government. Good morning, Your Honor. My name is Ron Morgan. I'm an attorney with the Department of Justice, and I represent the Secretary of Veterans Affairs this morning. Let me just start at the outset by pointing out the things that the Court has already observed. The question of service connection is a question of application of law to fact beyond the Court's statutory jurisdiction. The sufficiency of the evidence is a question of law to fact, which is beyond the Court's jurisdiction. Whether the duty to assist has been violated is beyond the Court's jurisdiction, and whether the benefit of the doubt rule has been applied is also outside the Court's jurisdiction. So the only thing that remains within the Court's jurisdiction, arguably, that is set forth in the appellant's brief appears at page 11, where, and I will just quote from the brief, it says, Consequently, the veteran asks this court to find, as a matter of law, the CAVC may not affirm the BVA's denial of a veteran's claim for benefits based upon an absence of evidence. Taken to its logical conclusion, and what that means is that if the claimant fails to prove his case, the claim cannot be denied. Yeah, but that doesn't answer our question about whether or not we have jurisdiction. I agree. We might say, and we might agree with you on the merits, that the statutory construction they're proposing is overbroad, even ridiculous. That's correct. But that doesn't go to the question of why we wouldn't have jurisdiction. That's a separate question. You're right. The first question is why don't we have jurisdiction if they're proposing that their read of the statute, and we are not sure which statute to require, does the government come forward with affirmative evidence disproving every allegation made by the claimant? Again, irrespective of the merits of that dispute, why don't we have jurisdiction to say yes or no? Your Honor, we maintain you do not have jurisdiction. I'll clear that up. The only arguable basis for jurisdiction is the decision of this court in Morgan which says if there was a rule of law which would have changed the outcome, and that's what, to the extent that I understand the argument, that appears to be what is being argued here. Now, the problem with that, it also seems, is that – Can I interrupt you? Certainly, sir. I'm not sure I understood the answer to the first question. I think if I've understood it correctly, it's a question in my mind as well. Before you start talking about something else, please explain why there's no jurisdiction. If the question teed up by the appellant is, you need to interpret this statute to require the government to give a medical examination which will explicitly address every contention, right? Your Honor, I don't think that question has been posed to the court. But if we assume that it has, that's not what the statute says. That's not what's being asked here. Instead, what is being asked here, at least to the extent that I understand it – So based on what the statute says, are you saying that it's a matter of statutory interpretation that this court has jurisdiction? If the court reads the appellant's position as amounting to that, that is the question of statutory interpretation, then the court has jurisdiction. I don't understand the appellant's brief phrasing. Well, I'll give you an answer other than your own. But I thought the government's position might be that even if we read the complainant as saying, we want you to interpret the statute that requires an affirmative evidence disproving every contention made by the claimant, I thought you were then saying that that still doesn't give you jurisdiction in this place because it also has to be outcome determinative. That is correct. Is it your view that in order for us to have jurisdiction over a statutory claim, that our review of that statutory argument has to somehow be outcome determinative? No, Your Honor. In order for the court to review a rule of law claim under Morgan, that has to be outcome determinative. And your view is that our view of the question that we've posited here, the statutory construction question, is not outcome determinative because? That is correct. Because the findings that would be required, that is this quote-unquote negative evidence, is present in the record. But in order to determine that, you've got to go back and examine the facts. So we're in that mad cycle again. Everything that has been posited in this brief is dependent upon a factual evaluation of the record, which the court has expressly acknowledged it doesn't have jurisdiction to do. No, it doesn't. I mean, the pure statutory question, leaving aside whether or not it would change the results of this case, the pure statutory question is whether outside the facts of this case. It's not required. Your Honor, if the court can read that in here, and it is purely a question of statutory interpretation, I will concede that the court has jurisdiction. That does not appear to be what's set forth in the brief. Well, why isn't the sentence that you brought our attention to right at the very beginning, where it says, as part of the final event of law, the CAGC may not affirm, deviate, denial, based upon an absence of evidence. Your Honor, that is then shifting the burden to the government to disprove the claimant's claim, to disprove the evidence. My question is, why isn't that an issue of statutory interpretation? You may well be right. You said there's no way you could disprove the statute that way. It makes no sense. It's unfounded. But do you have jurisdiction to make that discretion? Maybe not. Your Honor, if we take it as purely an academic question of whether there is jurisdiction to interpret the statute, clearly there is. The way this argument is framed, or this issue was framed, however, it says, whether the CABC may affirm the BVA's denial of the claim, which is predicated upon the absence of evidence negating such claim. That then requires the court to go in and determine, is there factual evidence? If there is a factual question at issue, the court doesn't have jurisdiction to make that factual determination. If I may. How would we ever reach the question of law presented? Your Honor, in this case, I don't think the court can. Not in this case. In any case. In this case, if the question becomes one of whether the government, Because the question of law as posed includes the statement that whether the board's denial of a veteran's claim for benefit is based upon an absence of evidence. The question, in all cases, presents questions of sufficiency of evidence. That is exactly right, Your Honor. So are you saying that the question itself is fundamentally beyond our jurisdiction? It is, Your Honor. Even as a question of law? It is. It is. But is your additional argument in this case that it doesn't matter because it wouldn't affect the outcome? That's correct, Your Honor. This question is not applicable to these sets of facts because there was a permanent evidence portfolio. That is correct. So the issue doesn't even exist periodically. That is correct. There's another way to read this question, and that is simply to seek an interpretation of the statute in terms of the obligations a veteran has to present evidence and make a case, not addressing the specific facts or applying facts to the law of a specific case, but simply on the legal question of what showing must a veteran make in order to establish a case. In that situation, Your Honor, I think you would have an appellate seeking an advisory opinion, which the court doesn't have jurisdiction to do. There has to be some case or controversy here. Exactly. That's right. But if it was outcome determinative, then it doesn't seem under the facts of the case that it would be advisory. But here, that's not the case. How would we ever determine whether something's outcome determinative without looking at the facts? It would come full circle back to the same exact thing. Your Honor, that is exactly the problem that we have been struggling with from the outset. But here, we don't need to get to that. But there could be a case in which we would get to it when the record is devoid of any evidence of that. That is a possibility, Your Honor, that the court could. But the question then becomes, how does the court overcome the factual determinations? Because then, at least under this set of circumstances, you have to take it as a hypothetical. If it's taken as a hypothetical, then it would be seeking an advisory opinion, which the court has said it's not going to do. Your Honor, to me, this is taking Mr. Messier's arguments through their logical extremes. It almost appears to impose upon the government an affirmative duty to disprove. That is, to prove a negative regarding the elements of the claim. That clearly is not the standard. Moreover, it appears that the argument is such that if Mr. Messier initially made an argument which is some evidence... At this point, are you now arguing why this statutory interpretation proposed by the other side can't possibly be right? Yes, sir. Yes, sir, I am. Because what would happen there is that that would in effect shift the burden. I mean, there is no shifting of burden here. The claimant has the obligation from the beginning through the conclusion to prove the elements of his claim. Recently, back in July, the court decided a case in Cromer. In Cromer, the records were destroyed in the fire and the appellant maintained that there should be two presumptions. The first presumption is that the government was negligent. The second is that the records, if they hadn't been destroyed, would have supported the appellant's position. The court said that amounts to a shifting of the burden, which this court cannot do. Moreover, what the result that Mr. Messier argues in this case is contrary to the express language of the statute, and it's further, and I believe we pointed out in the brief, it's contrary to the legislative history of the benefit of the doubt role in the duty to assist. In 2002, when that statute was enacted, the legislative history says this doesn't change the burden. The burden rests with the claimant from the outset. Moreover, there's no claim that, and if you look at the record, clearly the government provided and fulfilled its duty to assist. Moreover, if you read the hearing officers, if you read the transcript of the hearing, the hearing officer didn't identify, is this specifically limited to Agent Orange? He said, what is the source of your skin condition? Is it service-related? So the VA took the broadest possible view of Mr. Messier's condition. Remember, there were two claims. There was a claim back in 1988 that says that my skin condition is related to creosote exposure. He was discharged from the service in 1970, and his discharge physical shows skin condition is normal. It's not until 1979 that it becomes manifest. The determination of neurotic excoriation is in the express face of the medical history, which talks about, number one, the exposure to the herbicide Agent Orange and or DDT. There is then, after that assessment, there was a comment, and the comment says, in essence, I also find it's not related to the creosote exposure during service. The government has taken, and the VA has taken, the broadest possible view of Mr. Messier's skin condition and made its express determinations. That express determination was his skin condition is a result of neurotic excoriation. By the way, neurotic excoriation, the underlying definition of that is there's no known physical condition of the skin to cause this. So is it fair to say that the position you're taking is that the stance for interpretation of what's supposed is, in this case, purely hypothetical because there is negative evidence in it? That's correct, Your Honor. Well, if you go back and look at 4C, which is the case I believe that was being referred to, the definition there, it says very specifically that since the definition of evidence encompasses quote-unquote negative evidence, which tends to disprove the existence of an alleged fact, this negative evidence, in fact, has been presented. But it's even more basic than that, Your Honor. The question becomes, who has the obligation to prove the plaintiff? That rests squarely with the appellant. It never changes and has been satisfied in this case. If the court has no further questions, I just refer the court back to the brief. Thank you very much. Thank you very much. Ms. Morgan? Ms. Sesta? I'll try to keep it short since I did go over time and you were gracious enough to give me a few seconds here to respond. When we're talking about the burden of proof, and my background is in criminal law, quite honestly, and in any other area of law, including criminal law, if the state doesn't present its case or if the defense can basically disprove the case or the state doesn't put enough evidence to support its case, then either way the state loses. That's because in those kind of contexts, absence of evidence and negative evidence are essentially the same thing. This Veterans Claimant System is a pro-claimant system. There is a duty to assist. While the burden is on the vet initially under 5107A to present and support his claim of benefits, there is a duty to assist on the part of the VA under 5103A and 5103AD2B to assist the veteran in developing that claim  for the veteran to develop that claim is in the possession of the VA. So the veteran has to meet that threshold, and under McClendon it's very clear that that is a very low threshold to get to the point where we have to have a yes or no medical nexus opinion under 5103AD2B. But once you get over that threshold, we have to have an opinion, and anything less than that is a failure on the duty to assist for the VA administration. And basically in that context, you have to keep going back until you get a yes or no. We're not asking that there's some kind of a finding of yes or no to the service connection question that is 99% sure. That just has to be a more likely than not opinion, and if it's so close that the VA examiner can't make a medical nexus finding one way or another, then the benefit of the doubt provision under 5107B applies, and the benefit of the doubt goes to service connection for the veteran. So while we can stand up here and talk about burden of proof, the fact of the matter is that in this system, because of the duty to assist, the VA has to help that veteran develop that claim. And that's where I think our disagreement is with the state. Now, as far as whether or not this is going to make a difference in this case and whether or not you have jurisdiction, the fact of the matter is that the way that the state is arguing this jurisdiction question requires that the only way that you can find that this question of law isn't going to make a difference in this case is if you make a factual finding that the underlying evidence in this case, which is something that you don't have jurisdiction to do, is negative evidence as opposed to whether or not it's negative or an absence of evidence on the medical examination question. That is another question for another court on another day. What we need is, because there's not an explicit definition of negative evidence in the Veterans Claims System, we need an interpretation of how those two statutes interact with each other and define negative evidence. All right. Thank you very much. We have your case. The case is submitted. Next case. Thank you.